1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    V.I.P. Mortgage Incorporated,                No. CV-24-02865-PHX-DWL

10                    Plaintiff,                   **ORDER**

11   v.

12   Jennifer Gates,

13                    Defendant.

14

15          Jennifer Gates ("Gates") brought an arbitration demand against her former

16   employer, V.I.P. Mortgage, Inc. ("VIP"), for unpaid overtime compensation under the Fair

17   Labor Standards Act ("FLSA").  In July 2024, following a four-day hearing, the arbitrator

18   issued a detailed 25-page decision concluding that although Gates had overstated her

19   hours-worked claims in various respects, Gates was still entitled to overtime compensation,

20   liquidated damages, and attorneys' fees and costs, resulting in a total award of $650,805.41.

21   (Doc. 1-2.)

22          Following the issuance of the arbitrator's decision, VIP filed a petition to vacate or

23   modify the award.  (Doc. 1.)  Gates, in turn, moved to confirm the award.  (Doc. 6.)  For

24   the reasons that follow, VIP's vacatur petition is denied and Gates's motion to confirm the

25   arbitration award is granted.

26                          **RELEVANT BACKGROUND**

27   I.     The Arbitration Proceeding

28          Between 2016 and 2022, Gates worked for VIP as an inside loan officer.  (Doc. 1-2

at 2-4.)  It is undisputed that, for purposes of the FLSA, Gates was a non-exempt employee throughout this period and was thus entitled to overtime compensation.  (*Id.* at 3.) Nevertheless, at the direction of supervisors, Gates followed a practice of reporting on her timecards that she worked exactly 8 hours each day, "even when this was not an accurate representation of the actual hours worked."  (*Id.* at 4-5.)

Gates's employment contract with VIP included an arbitration clause specifying that all employment-related disputes "shall be resolved through binding arbitration pursuant to the Federal Arbitration Act."  (Doc. 1-1 at 4.)  Accordingly, after separating from VIP, Gates filed a demand for arbitration, arguing, *inter alia*, that VIP had failed to pay her overtime in violation of the FLSA.  (Doc. 1-2 at 2-3.)  During the resulting arbitration proceeding, which culminated in a four-day hearing in January 2024, Gates sought to establish the amount of hours she had worked by "provid[ing] a detailed description, by day, which incorporated her first business action of the day, her last business action of the day, and included corroborating evidence from her V.I.P. email, her phone records, as well as computer login/logout data when she accessed V.I.P.'s internal Encompass loan software."  (*Id.* at 2, 6.)  "[T]he reconstruction method utilized by [Gates] reflect[ed] many workdays in excess of 12 hours per day, and several instances of 15 or more hours per day."  (*Id.* at 7.)  VIP, in turn, "pointed out a number of instances not accounted for in [Gates's] reconstruction of her hours worked.  These included medical appointments, appointments at the Mexican consulate, a company reward trip to a resort in Mexico, the weekend [Gates] attended her daughter's wedding out of state, as well as days where there were significant periods of inactivity."  (*Id.* at 6-7.)  VIP also argued, more broadly, that Gates "cannot recover under the FLSA for hours worked during her relocation to Mexico, and that [Gates's] estimated hours for on-call weekend work are overstated because she was primarily waiting to be engaged rather than engaged to wait."  (*Id.* at 7.)

In a 25-page decision issued on July 22, 2024, the arbitrator concluded that Gates was entitled to some overtime compensation due to her long work hours during the time

1    period in question[1] but also agreed with VIP that Gates's claimed work hours should be

2    reduced in various ways.  More specifically:

3         • *First*, the arbitrator concluded that Gates was not entitled to any overtime

4    compensation "for time worked after she relocated from Arizona to San Nicolas de Ibarra

5    Mexico on July 31, 2021" because "the FLSA contains clear, express language that

6    exempts time worked in a foreign country."  (*Id.* at 7-8.)

7         • *Second*, the arbitrator concluded that Gates's "time for on-call weekend work

8    should be viewed as time waiting to be engaged, rather than time in which she was engaged

9    to wait."  (*Id.* at 8.)  Based on this determination, the arbitrator performed a detailed

10   analysis of Gates's claimed work activity on weekends, often using VIP's phone, email,

11   and computer records to determine the lesser amount of time that Gates actually worked

12   on a particular weekend.  (*See, e.g.*, *id.* at 13-14 ["On December 5, 2020, Exhibit 5 reflects

13   [Gates's] first work-related activity was an email sent at 10:05 a.m. and her last email sent

14   at 6:05 p.m., an estimated workday of 8 hours.  Exhibit 5 also reflects two minutes of phone

15   activity by [Gates] between the hours of 1:31 and 1:33 p.m.  She was active in the

16   Encompass system beginning at 1:22 p.m., concluding at 5:06 p.m. This arbitrator

17   concludes that [Gates] was likely working the afternoon of December 5th, but cannot

18   conclude that [Gates] was working the entire time between her 10:05 a.m. email and

19   logging into the Encompass system at 1:22 p.m.  [Gates's] hours for this day will be

20   reduced from 8 hours to 5 hours, a reduction of 3 hours."].)  The arbitrator prefaced this

21   analysis by explaining that "[w]hile it is impracticable for this arbitrator to perform a day

22   by day analysis for all of [Gates's] estimated work hours, it is possible to review [Gates's]

23   estimates for weekend work."  (*Id.* at 8.)

24        • *Third*, the arbitrator concluded that VIP had successfully "identified a number of

25   dates on which [Gates] self-identified as being out of office for various personal reasons."

26   _____

27   [1]      Among other things, the arbitrator noted that "the time period at issue in this matter
         coincided with an unprecedented time in the real estate industry with historically low
         interest rates, as well as a global pandemic.  As a result, the volume of loan activity (both
28       for refinancing existing mortgages and the sales of new properties) were at historically high
         levels."  (Doc. 1-2 at 4.)

1    (*Id.* at 18.)   Based on this determination, the arbitrator reduced or eliminated many of

2    Gates's claimed work hours.  (*Id.* ["[Gates] will not be awarded any overtime for the week

3    of October 21-27 (her daughter's wedding); the two weeks ending March 8 and 15, 2020

4    (the corporate reward trip to Mexico); or the week of November 18-24 (vacation).   In

5    addition, [Gates's] estimated work hours for the dates February 10, 2020, February 12,

6    2020, March 3, 2020, April 15, 2021 and June 18, 2021 should reflect 0 hours.  [Gates's]

7    estimated hours will be reduced by 1 hour on each of the following dates: October 28,

8    2019; October 29, 2019, February 14, 2020, February 18, 2020, June 3, 2021, and June 4,

9    2021.  [Gates's] estimated hours will be reduced by 3 hours on each of the following dates:

10   February 18, 2021, February 24, 2020, May 11, 2021, and June 29, 2021."].)

11        • *Fourth*, the arbitrator concluded that "the totality of the evidence submitted does

12   not support a conclusion that [Gates] regularly worked in excess of 12 hours per day" and

13   thus reduced Gates's "damage reconstruction . . . to a maximum of 12 hours for any

14   workday on which [her submission] reflects more than 12 hours."  (*Id.*)

15        Based on these modifications and findings, the arbitrator concluded that "the total

16   amount of unpaid overtime compensation due" to Gates was $213,440.93.  (*Id.* at 18.)[2]

17        Next, the arbitrator concluded that Gates's supervisor should not be held

18   individually liable for the award.  (*Id.* at 19-20.)

19        Next, the arbitrator evaluated whether Gates had established a "willful violation" of

20   the FLSA by VIP, which would trigger a longer statute of limitations.  (*Id.* at 20-22.)  The

21   arbitrator concluded that the longer limitations period should apply because, *inter alia*, VIP

22   "showed reckless disregard for its statutory obligation to maintain accurate time records.

23   Indeed, it was a known practice during [Gates's] employment with V.I.P. that she would

24   _____

25   [2]    Although the arbitrator's decision states that "the total amount of unpaid overtime
compensation due to [Gates] is $214,690.00" (Doc. 1-2 at 18), this figure appears to be a
26   typo.   As support for this figure, the decision states: "See Arbitrator's calculation of
damages, attached and incorporated herein as Addendum A." (*Id.*)  Addendum A, in turn,
27   calculates this figure as $213,440.93. (Doc. 7-1 at 18.)  Additionally, later in the decision,
the arbitrator concluded that adding "liquidated damages in an amount equal to [Gates's]
28   claim for unpaid overtime compensation" would result in a "total interim award of
$426,881.86." (Doc. 1-2 at 22-23.)  This calculation only makes sense if the total amount
of unpaid overtime compensation is $213,440.93.

1  report exactly 8 hours of work each day.  To work exactly the same amount of hours each

2  day—week after week, month after month and year after year—is not a reasonable factual

3  or mathematical possibility.  And this practice was not limited to [Gates].  It was also

4  followed by several other non-exempt employees.  Indeed, this practice was taught to

5  [Gates] at V.I.P.'s corporate headquarters at the beginning of her employment.  It is simply

6  not reasonable to believe that during this unprecedented time in the mortgage loan industry

7  [Gates] could accomplish the precipitous increase in workload within the confines of a 40

8  hour work week."  (*Id.* at 21.)

9       Next, the arbitrator evaluated whether Gates was entitled to recover liquidated

10  damages under the FLSA—an inquiry that turned on whether VIP had acted in subjective

11  good faith and with objectively reasonable grounds to believe it was not in violation of the

12  FLSA.  (*Id.* at 22-23.)  The arbitrator concluded that "[t]he facts supporting the willful

13  determination above are equally dispositive of this issue" and that Gates was thus entitled

14  to "liquidated damages in an amount equal to her claim for unpaid overtime compensation,

15  for a total interim award of $426,881.86."  (*Id.*)

16      Finally, the arbitrator concluded that Gates, as a prevailing party under the FLSA,

17  was entitled to recover her reasonable attorneys' fees and costs.  (*Id.* at 23-26.)  However,

18  the arbitrator reduced Gates's fee request in various respects, ultimately concluding that

19  "the final judgment in this matter shall be increased in the amount of $214,690.00 for

20  reasonable attorneys' fees incurred and $9,233.55 for reasonable taxable and non-taxable

21  costs incurred."  (*Id.*)  This resulted in a "total" award to Gates in the amount of

22  $650,805.41, plus post-judgment interest.  (*Id.* at 26.)

23  II.    These Proceedings

24      On October 21, 2024, VIP initiated this action by filing a "Complaint and Petition

25  To Vacate And/Or Modify An Arbitration Award."  (Doc. 1.)

26      On October 24, 2024, Gates filed a motion to confirm the award.  (Doc. 6.)

27      On October 30, 2024, Gates filed an answer to the complaint.  (Doc. 7.)

28      On November 7, 2024, VIP filed a response to Gates's motion.  (Doc. 10.)

On November 8, 2024, Gates filed a reply in support of her motion.  (Doc. 11.)

Neither side requested oral argument.

## DISCUSSION

I.     <u>Legal Standard</u>

The Federal Arbitration Act ("FAA") provides that a party to an arbitration may apply for an order confirming the arbitration award, and "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]."  9 U.S.C. § 9.  "The burden of establishing grounds for vacating an arbitration award is on the party seeking it."  *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

Section 10 "of the FAA provides the exclusive means by which a court reviewing an arbitration award under the FAA may grant vacatur of a final arbitration award."  *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664 (9th Cir. 2012).  Vacatur is permitted only:

(1)     where the award was procured by corruption, fraud, or undue means;

(2)     where there was evident partiality or corruption in the arbitrators, or either of them;

(3)     where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  Here, the sole provision on which VIP relies is § 10(a)(4).  (Doc. 1 ¶¶ 47-48; Doc. 10 at 2.)

As the Ninth Circuit has explained, "[a]rbitrators exceed their powers" for purposes of § 10(a)(4) only "when they express a 'manifest disregard of law,' or when they issue an award that is 'completely irrational.'"  *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citations omitted).  "[T]o rise to the level of manifest disregard the governing law

alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879-80 (9th Cir. 2007) (cleaned up).

Section § 10(a)(4) creates "a high standard for vacatur. . . . It is not enough to show that the arbitrator committed an error—or even a serious error. This extremely limited review authority is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1240 (9th Cir. 2022) (cleaned up). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the FAA." *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (cleaned up). An arbitration award demands deference because "[b]road judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc).

II.    The Parties' Arguments

In its complaint, VIP identifies the following four reasons why the arbitrator should be deemed to have "exceeded her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made":

a.    By awarding Gates overtime for a three year period without conducting a "day by day" analysis despite evidence that negated the reasonableness of Gates'[s] calculations;

b.    By relying on "electronic touches" to calculate overtime under the FLSA and [*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)] and its progeny; and

c.    By finding that V.I.P. Mortgage willfully violated the FLSA in light of the undisputed evidence that Gates intentionally failed to report her hours each week; and

d.    By awarding attorneys' fees to Gates for time not incurred in connection with a claim on which she was a prevailing party.

1    (Doc. 1 ¶ 47.)

2        In her confirmation motion, Gates argues that "[t]here is no basis to vacate, modify

3    or correct the Final Award.  Given the existence of the Final Award entered by [the

4    arbitrator], and the fact that it contains a reasoned, facially plausible legal basis for entry

5    of judgment in favor of [Gates], it is requested that the Court enter an order confirming the

6    Final Award in all respects pursuant to 9 U.S.C. § 9 . . . ."  (Doc. 6 at 4-5.)

7        In a related vein, in her answer, Gates contends that the four assignments of error

8    identified in VIP's complaint are insufficient to support vacatur.  (Doc. 7.)  More

9    specifically, as for VIP's first assignment of error, Gates argues that "[t]his argument was

10   set forth in a conclusory fashion and fails to cite to any specific law that would require the

11   Arbitrator to perform a 'day by day' analysis.  [VIP] also fails to point to any evidence in

12   the record establishing that the Arbitrator knew and understood the law but chose to

13   disregard it.  In its Petition, [VIP] omits to inform the Court that [VIP] never performed

14   the same 'day by day' analysis to refute [Gates's] estimate of hours that it is now claiming

15   the Arbitrator was bound by law to perform.  At the arbitration hearing, [VIP] did not

16   provide evidence to refute [Gates's] estimate of hours worked on a 'day by day' basis but

17   instead provided only evidence to rebut her estimated time on a few days.  And on the very

18   few days for which [VIP] did provide evidence to refute [Gates's] estimate of hours

19   worked, the Arbitrator made a reduction of the award to [Gates]."  (*Id.* at 4-5.)  Gates

20   continues: "[T]he Arbitrator correctly applied the *Mt. Clemens* burden shifting framework

21   and held that it was in fact [VIP's] burden to come forward with evidence of the precise

22   amount of work performed, i.e. a 'day by day' analysis, or with evidence to negate the

23   reasonableness of the inference to be drawn from the employee[']s evidence.  The

24   Arbitrator's analysis in the Final Award was thorough and correctly applied the law to the

25   facts presented at the Arbitration hearing."  (*Id.* at 5.)  As for VIP's second assignment of

26   error, Gates argues that "at no point does [VIP] cite to any authority that would prohibit

27   the Arbitrator from relying on 'electronic touches.'  And what [VIP] is calling 'electronic

28   touches' are emails sent and received by [Gates], phone records, computer login/logout

1  data, and audit reports from software that tracked when [Gates] would perform[] work by
2  modifying a loan application.  [VIP] has failed to cite to any authority that states an
3  arbitrator cannot consider evidence of documented times that a Claimant was performing
4  work in order to assess whether a claimant's estimate was credible pursuant to the *Mt.*
5  *Clemens* burden shifting analysis." (*Id.* at 5-6.)  As for VIP's third assignment of error,
6  Gates accuses VIP of "provid[ing] only one conclusory sentence" and argues that VIP has
7  not met its burden of "identify[ing] any law that the Arbitrator ignored with respect to
8  willfulness or that the Arbitrator knew and understood the law but chose to disregard it."
9  (*Id.* at 6.)  As for VIP's fourth assignment of error, Gates argues that VIP "has not set forth
10  any evidence that the Arbitrator knew the law and intentionally disregarded it" and "has
11  not even set forth what time entries were incorrectly awarded." (*Id.* at 7.)

12  In its less-than-two-page response to Gates's motion, VIP does not provide a
13  meaningful response to any of these arguments. (Doc. 10.)  Instead, VIP simply states that
14  "the Court should permit the parties to fully brief the issues raised in [VIP's] Petition to
15  Vacate and [Gates's] cross Application to Confirm the Award and/or deny [VIP's]
16  Application." (*Id.* at 2.)

17  In reply, Gates argues that VIP's request for leave to brief the merits of the vacatur
18  issue is inappropriate because it was VIP's burden to develop those arguments in a motion
19  filed at the outset of this action.  (Doc. 11.)

20  III.   Analysis

21  VIP bears the burden of establishing why vacatur of the arbitration award is
22  warranted here.  *U.S. Life Ins. Co.*, 591 F.3d at 1173.  VIP has not come close to meeting
23  that burden.

24  In its complaint and again in its response to Gates's motion, VIP simply identifies
25  four aspects of the arbitrator's decision that it believes were wrongly decided.  But under
26  § 10(a)(4), "[i]t is not enough to show that the arbitrator committed an error—or even a
27  serious error."  *HayDay Farms, Inc.*, 55 F.4th at 1240.  "Neither erroneous legal
28  conclusions nor unsubstantiated factual findings justify federal court review of an arbitral

award under the FAA." *Aspic Eng'g & Constr. Co.*, 913 F.3d at 1166.  VIP has made no effort to establish, through reasoned argument or citations to authority, why the four challenged aspects of the arbitrator's decision were wrong, let alone to establish that the law governing each issue was "well defined, explicit, and clearly applicable," *Collins*, 505 F.3d at 879-80, or that "the arbitrator understood and correctly stated the law, but proceeded to disregard the same," *Bosack*, 586 F.3d at 1104.  At any rate, the Court is satisfied that the arbitrator's analysis as to each challenged issue was not completely irrational or emblematic of a manifest disregard of the law.  To the contrary, the underlying decision strikes the Court as unusually detailed and carefully reasoned, and in many instances the arbitrator resolved disputed issues in VIP's favor.

Accordingly,

**IT IS ORDERED** that:

1.    VIP's vacatur petition (Doc. 1) is **denied**.

2.    Gates's motion to confirm the arbitration award (Doc. 6) is **granted**.[3]

3.    The Clerk shall enter judgment accordingly and terminate this action.

Dated this 13th day of November, 2024.

_____
Dominic W. Lanza
United States District Judge

---

[3]    The Court notes that, in her proposed order, Gates asks the Court to "adopt[]" the final award issued by the arbitrator and then suggests that the arbitrator's award consisted of an award of $650,805.41 in damages, an additional award of $214,690 in attorneys' fees, and an additional award of $9,233.55 in costs.  (Doc. 6-4.)  This is incorrect.  The arbitrator's "total" award of $650,805.41 was inclusive of the awards of attorneys' fees and costs.  (Doc. 1-2 at 26.)  The Court also notes that Gates has voiced an intention to file a motion for the attorneys' fees she incurred during this confirmation/vacatur proceeding, based on the seeming belief that the prevailing party in such a proceeding is always entitled to recover its fees.  (Doc. 7 at 8.)  Before filing such a motion, Gates is encouraged to review *Holsum Bakery Inc. v. Bakery, Confectionary, Tobacco Workers & Grain Millers, Loc. 232*, 699 F. App'x 690 (9th Cir. 2017), and this Court's recent order in *Riverside Eng'g Inc. v. Gemini Ins. Co.*, 2024 WL 4165397 (D. Ariz. 2024), both of which address the standards governing fee requests in proceedings to vacate/confirm an arbitration award.