**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| V.I.P. Mortgage Incorporated,<br><br>   Plaintiff,<br><br>v.<br><br>Jennifer Gates,<br><br>   Defendant. | No. CV-24-02865-PHX-DWL<br><br>**ORDER** |

    Jennifer Gates ("Gates") filed an arbitration demand against her former employer, V.I.P. Mortgage, Inc. ("VIP"), for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). In July 2024, following a four-day hearing, the arbitrator issued a detailed 25-page decision concluding that although Gates had overstated her hours-worked claims in various respects, Gates was still entitled to overtime compensation, liquidated damages, and attorneys' fees and costs, resulting in a total award of $650,805.41. (Doc. 1-2.)

    In October 2024, VIP initiated this action by filing a petition under the Federal Arbitration Act ("FAA") to vacate or modify the award. (Doc. 1.) Gates, in turn, moved to confirm the award. (Doc. 6.) In a November 14, 2024 order, the Court denied VIP's petition, granted Gates's motion, and confirmed the $650,805.41 award. (Doc. 12.)

    Now pending before the Court is Gates's motion for attorneys' fees. (Doc. 14.) For the reasons that follow, the motion is granted.

    …

**DISCUSSION**

I.  The Parties' Arguments

In her motion, Gates seeks $10,539.15 in attorneys' fees.  (Doc. 14.)  Gates argues that "[c]ourts in this Circuit and others have widely held that the provision in the FLSA and other statutory fee-shifting statutes include attorneys' fee awards for successfully obtaining confirmation of an arbitrator's decision" (*id.* at 4-5) and contends that the requested $10,539.15 fee is reasonable when considering the time and labor required of counsel and support staff; the novelty and difficulty of the questions presented; the requisite skill required to perform legal services; the customary fee charged; the reasonableness of the fee agreement; the amount of money and the results obtained; the experience, reputation, and ability of counsel; the undesirability of the case; the nature and length of counsel's attorney-client relationship; and the size of fee awards in similar actions (*id.* at 5-13).  Gates also provides, as attachments to her motion, a declaration from her counsel that, among other things, identifies counsel's hourly rate as $413.30 (Doc. 14-1); a spreadsheet with detailed billing entries showing that Gates's counsel spent 19.6 hours on the confirmation-related litigation and 5.9 hours drafting the motion for attorneys' fees (Doc. 14-2); an expert report from a recent case in the District of Arizona in which the expert opined that an hourly rate of $400 in FLSA litigation is reasonable (Doc. 14-3); an avowal that Gates's counsel consulted in good faith with VIP's counsel before filing the fee request (Doc. 14-4); a copy of the engagement letter between Gates and her counsel (Doc. 14-5); and a copy of the correspondence that Gates's counsel sent to VIP's counsel before filing the fee request (Doc. 14-6).

VIP opposes Gates's motion.  (Doc. 15.)  First, although VIP does not dispute that attorneys' fees may be awarded under the FLSA in connection with litigation over the enforceability of an FLSA-based arbitration award, VIP contends that such an award is not mandatory and that the Court should exercise its discretion to deny fees here because (a) Gates made an overbroad request for attorneys' fees during the underlying arbitration proceeding and thus "has already received an award of attorneys' fees in this matter beyond

what she was entitled to under the FLSA"; and (b) Gates unreasonably expanded the scope of the enforcement-related litigation by filing a parallel enforcement action in Arizona state court, even though the arbitration provision in her contract required her to file any such action in federal court. (*Id.* at 3-4.) Second, in a footnote, VIP questions whether Gates complied with LRCiv 54.2's consultation requirement before filing the motion. (*Id.* at 3 n.4.) Third, VIP argues that the amount of time Gates's counsel spent preparing the fee motion (5.9 hours) is excessive. (*Id.* at 4.) Fourth, VIP argues that the amount of time Gates's counsel spent preparing the confirmation motion (8 hours) is excessive because, by that time, Gates's counsel had already prepared and filed a different confirmation motion in state court. (*Id.* at 4-5.) VIP also notes that the confirmation motion erroneously asked the Court to add $214,690 to the size of the award being confirmed. (*Id.*) Fifth, VIP seeks to distinguish the purportedly comparable award identified by Gates. (*Id.* at 5.)

In reply, Gates argues that her mistaken request in the confirmation motion for an additional $214,690 was "an honest mistake" that had no bearing on the outcome and "has nothing to do with eligibility, entitlement, and [the] reasonableness of the requested fee award" (Doc. 18 at 1-2); that the state-court enforcement action is a red herring because her motion only "seek[s] fees from this Federal action that was commenced by VIP" and does not "seek[] fees for any collection or state court claims" (*id.* at 2); that VIP's arguments regarding the purportedly excessive size of the fee award during the arbitration proceeding amount to an "attempt[] to relitigate for the fourth time issues that have already been decided by the Arbitrator" and have no bearing on the fee analysis here (*id.* at 3); that VIP's arguments regarding LRCiv 54.2 "are an outright falsity" because she made multiple efforts over a multi-day period to engage in good-faith settlement efforts with VIP's counsel, only for VIP's counsel to fail to timely respond (*id.* at 3-5); and that VIP's failure to provide its own billing records undermines any challenge to the reasonableness of Gates's counsel's time expenditures (*id.* at 5). Gates also contends she is entitled to attorneys' fees for the 2.6 hours it took her counsel to prepare the reply, which would increase the total award to $11,613.73. (*Id.* at 5-6.)

II.     Analysis

As an initial matter, although the Court previously raised questions about the issue (Doc. 12 at 10 n.3), both sides agree that, under the FLSA, Gates may recover her reasonable attorneys' fees based on her success in obtaining an order confirming the underlying arbitration award. This agreement appears to be "consistent with the overwhelming consensus of courts . . . that have awarded attorneys' fees to FLSA plaintiffs who have successfully confirmed or defended an arbitration award," *Johnson v. Parts Authority, LLC*, 2021 WL 4221775, *3 (E.D.N.Y. 2021), and the Court will, in any event, follow the parties' agreement on this issue in light of "the principle of party presentation," under which "courts normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (cleaned up).

Turning to the merits, an award of attorneys' fees to a successful plaintiff in an FLSA action "is mandatory, even though the amount of the award is within the discretion of the court." *Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) (quoting *Houser v. Matson*, 447 F.2d 860, 863 (9th Cir. 1971)). *See also Ashton v. PJ Louisiana, Inc.*, 2020 WL 1068161, *2 (W.D. La. 2020) (noting the mandatory nature of "[a]ttorney's fees incurred in confirming and defending arbitration in an FLSA suit"). "To determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method. The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate . . . [but] courts may adjust that figure to account for factors that are not already subsumed in the initial lodestar calculation." *Gary*, 398 F. Supp. 3d at 485 (cleaned up).

The Court is satisfied that Gates's counsel's hourly rate of $413.30 is reasonable, *see, e.g.*, *Salgado v. Synergy Payment Solutions Inc.*, 2024 WL 4751587, *1 (D. Ariz. 2024) (finding $445 hourly rate reasonable in wage-related litigation), and VIP does not, at any rate, dispute the reasonableness of that figure. The Court is also satisfied by the reasonableness of the hours expended and rejects VIP's arguments to the contrary. Gates's counsel spent a total of only 25.5 hours litigating the merits of the enforcement action from

start to finish (which included responding to VIP's petition to vacate, drafting a cross-motion to enforce, and drafting a reply) and drafting the motion for attorneys' fees. (Doc. 14-2.) These are not unreasonable expenditures of time even considering the potential overlap with the state-court enforcement litigation, particularly given the results achieved, and their reasonableness is underscored by the fact that Gates's counsel chose not to bill for certain time entries and support services. (Doc. 14-1 ¶¶ 15-17.) Gates is also entitled to recover the fees associated with drafting the reply in support of her fee request. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable.").

Turning to VIP's remaining objections, although it is unfortunate that Gates's counsel double-counted the underlying fee award from the arbitration proceeding when calculating the size of the overall award that Gates wished to have enforced, this seeming scrivener's error had no bearing on the outcome and does not detract from the overall reasonableness of the hours expended. In a related vein, VIP's complaints about the size of the underlying fee award from the arbitration proceeding do not provide a basis for rejecting or reducing Gates's current fee request. The bottom line is that Gates prevailed in her attempt to enforce the underlying award and should be compensated for the reasonable fees she incurred in the course of securing the enforcement order. The Court also declines to reject or reduce Gates's current fee request due to her actions in the parallel state-court enforcement litigation. To the extent VIP believes that litigation was frivolous or otherwise unwarranted, it is free to seek a fee award from the state court.

Finally, the Court is satisfied that Gates complied with LRCiv 54.2(d)(1), which provides that "[n]o motion for award of attorneys' fees will be considered unless a separate statement of the moving counsel is attached to the supporting memorandum certifying that, after personal consultation and good faith efforts to do so, the parties have been unable to satisfactorily resolve all disputed issues relating to attorneys' fees or that the moving counsel has made a good faith effort, but has been unable, to arrange such conference."

The materials attached to Gates's motion establish that Gates's counsel made multiple good-faith efforts to consult with VIP's counsel in an effort to resolve the issue of fees.

Accordingly,

**IT IS ORDERED** that Gates's motion for attorneys' fees (Doc. 14) is **granted**. Gates is awarded $11,613.73 in attorneys' fees against V.I.P. Mortgage Incorporated.

Dated this 30th day of December, 2024.

Dominic W. Lanza
United States District Judge