**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| V.I.P. Mortgage Incorporated, | No. CV-24-02865-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Jennifer Gates, | |
| Defendant. | |

Jennifer Gates ("Gates") filed an arbitration demand against her former employer, V.I.P. Mortgage, Inc. ("VIP"), for unpaid overtime compensation under the Fair Labor Standards Act ("FLSA"). In July 2024, following a four-day hearing, the arbitrator issued a detailed 25-page decision concluding that although Gates had overstated her hours-worked claims in various respects, Gates was still entitled to overtime compensation, liquidated damages, and attorneys' fees and costs, resulting in a total award of $650,805.41. (Doc. 1-2.)

In October 2024, VIP initiated this action by filing a petition under the Federal Arbitration Act ("FAA") to vacate or modify the award. (Doc. 1.) Gates, in turn, moved to confirm the award. (Doc. 6.) In a November 14, 2024 order, the Court denied VIP's petition, granted Gates's motion, and confirmed the $650,805.41 award. (Doc. 12.)

Following entry of judgment, Gates filed a motion to recover the attorneys' fees she incurred during the confirmation/vacatur proceeding. (Doc. 14.) Gates only sought to recover the fees associated with one of her attorneys, James Weiler, and submitted evidence

that Weiler's hourly billing rate was $413.30.  (Doc. 14 at 9; Doc. 14-1 ¶ 13.)  In contrast, Gates did not seek to recover the fees associated with another of her attorneys, Jason Barrat.  (Doc. 14 at 8.)  Nevertheless, in an attempt to establish the reasonableness of Weiler's hourly rate, Gates asserted that that "Attorney Weiler and Attorney Barrat have comparable experience" (*id.* at 10) and submitted evidence that Barrat's hourly rate in 2023 was $400.  (Doc 14-3 at 3.)  Gates did not dispute the reasonableness of Weiler's hourly rate of $413.30 and the Court granted Gates's fee request in full, awarding $11,613.73.  (Doc. 20.)

VIP appealed, but on December 22, 2025, the Ninth Circuit affirmed the Court's confirmation of the arbitration award and denial of VIP's petition to vacate the arbitration award. *VIP Mortgage Inc. v. Gates*, 162 F.4th 1010 (9th Cir. 2025).  The mandate has now issued (Doc. 29), and the Ninth Circuit has transferred the case to the Court "for the purpose of deciding attorneys' fees."  (Doc. 37.)  This order addresses that issue.

**DISCUSSION**

I.      The Parties' Arguments

Gates seeks to recover an additional $61,628 in attorneys' fees and $6,466.63 in costs.  (Doc. 36.)  In support of the $61,628 fee request, Gates submits billing records indicating that since November 2024, Weiler has billed 98.4 hours on her case and Barrat has billed 26.1 hours on her case.  (Doc. 36-3.)  Additionally, Weiler and Barrat have submitted declarations avowing that their hourly rates are $495.  (Doc. 36-1 ¶ 12 [Weiler]; Doc. 36-2 ¶ 12 [Barrat].)  Gates further asserts in her motion that "Weiler increased his rate on December 1, 2025 from $450 to $495 and since then has had about 25 consultations where potential clients and current clients have paid $495 an hour for his services."  (Doc. 36 at 7.)  Meanwhile, in support of the $6,466.63 cost request, Gates asserts in her motion that this figure represents "collection costs."  (*Id.* at 11.)  The materials attached to the motion indicate that these costs are associated with services provided by two entities, Jaburg Wilk and Counsel Press.  (Doc. 36-4 [summary chart]; Doc. 36-7 [invoices].)  Although the billing entities associated with Jaburg Wilk seem to reflect collection-related activities (*see, e.g.*, Doc. 36-7 at 5 ["Prepare additional garnishments to BOA and JP

- 2 -

Morgan (.5) Prepare subpoena duces tecum to Fidelity Title."]), it is unclear what services were rendered in exchange for Gates's May 2025 payment of $2,052.79 to Counsel Press, "The Appellate Experts," or whether those services were collection-related. (Doc. 36-7 at 11.)

> While the [FLSA] permits prevailing plaintiffs to recover reasonable attorneys' fees, the statute does not authorize a blank check. . . . [Gates's] request is unsupported by the record and disproportionate to the work performed. The fees were incurred by multiple law firms and at least five attorneys, many of whom billed for duplicate communications, administrative tasks, and work unrelated to the successful defense of the appeal. Gates also attempts to recover additional attorneys' fees by labeling them as "costs," including fees incurred by a separate law firm retained for unsuccessful collection efforts prior to the posting of a supersedeas bond.

VIP opposes Gates's motion. (Doc. 38.) VIP contends:

(*Id.* at 1-2.) Next, VIP notes that "Gates' counsel seeks hourly rates of $495 per hour, despite the fact that both the Arbitrator and this Court have previously determined that substantially lower rates—approximately $400 to $413.30 per hour—were reasonable for the same attorneys in this very case." (*Id.* at 2.) Finally, VIP argues that "many of the billing entries submitted in support of the Motion are vague, blockbilled, or otherwise insufficiently detailed" and that some of the hours billed "are excessive or unnecessary, including inter-firm communications, administrative tasks, and more than 50 hours to draft her appellate answering brief." (*Id.*)

In reply, Gates argues that her counsel's hourly rates are "reasonable and customary," citing cases where higher rates were deemed reasonable (Doc. 39 at 3), noting that FLSA appellate work requires "specialized expertise" and "different skills than trial-level representation," such that "courts recognize that appellate work warrants higher rates than trial work" (*id.* at 3-4), and asserting that "[r]ates change over time" (*id.* at 4). Gates further argues that the "additional work by [her] attorneys was not done to pad bills, but rather a result of VIP's own decisions to unreasonably expand the scope of this litigation and their refusal to engage in good faith negotiations to fully and finally resolve these matters." (*Id.* at 6.) Responding to VIP's argument that certain expenditures were mislabeled as costs, Gates argues that "[t]he fees for Jaburg & Wilk were properly

categorized as costs because they represent third-party expenses necessarily incurred to enforce the judgment." (*Id.* at 6-7.)  Gates argues that "[t]he challenged administrative entries represent substantive review of third-party work product, not merely clerical tasks" and that "[t]he 54.8 hours spent on the Answering Brief was reasonable given the complexity and breadth of the appeal, the need to thoroughly research and respond to all VIP's arguments, and the high stakes involved." (*Id.* at 8-9.)  Gates also contends that "[t]he 4.9 hours spent on the current fee petition is reasonable given the need to compile and analyze new time records, address novel issues specific to the appeal, and respond to VIP's continued opposition" and asserts that the fee petition was necessitated by VIP's refusal to respond to reasonable settlement offers. (*Id.* at 9-10.)  Finally, Gates contends she is entitled to an additional $473.72 in post-judgment interest on the original judgment and seeks an additional $3,910.50 in fees arising from the 7.9 hours her counsel spent preparing the reply brief.  (*Id.* at 10.)

II.    Analysis

"The FLSA provides that upon a finding of a violation of the Act, the district court shall 'allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"  *Haworth v. State of Nev.*, 56 F.3d 1048, 1051 (9th Cir. 1995) (quoting 29 U.S.C. § 216(b)).  "Such awards may include fees for appellate and post-remand services."  *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).

"The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes."  *Haworth*, 56 F.3d at 1051 (cleaned up).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  This "lodestar" approach has "achieved dominance in the federal courts" and is the "guiding light of our fee-shifting jurisprudence."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).  *See also Gary v. Carbon Cycle Ariz. LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019) ("To determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method.").  The lodestar method "looks to the

prevailing market rates in the relevant community," is "readily administrable," and is "objective." *Perdue*, 559 U.S. at 551 (cleaned up). "[T]he lodestar method yields a fee that is presumptively sufficient" "to induce a capable attorney to undertake the representation of a meritorious civil rights case" but "does not produce windfalls." *Id.* at 552. "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee. *Id.* at 553.

### A.    Reasonableness Of Hourly Rate

Gates contends that the appellate and post-remand work performed by Weiler and Barrat should be compensated at an hourly rate of $495. "It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019). "This determination is not made by reference to rates actually charged the prevailing party. Rather, the court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Secretary of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (cleaned up). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). With that said, affidavits from the plaintiffs' attorneys are alone insufficient: "The fee applicant has the burden of producing satisfactory evidence, *in addition to* the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Schwarz*, 73 F.3d at 908 (emphasis added). Additionally, "a district court [may] rely on its own familiarity with the legal market," its "own knowledge of customary rates," and its own "experience concerning reasonable and proper fees." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

The Court concludes that Gates has failed to meet her burden of establishing that $495 is the prevailing market rate for the work at issue here. As noted, one way to make

the required showing on this issue is to submit a declaration from "other attorneys regarding prevailing fees in the community." *United Steelworkers of Am.*, 896 F.2d at 407. However, Gates has not included such a declaration as an attachment to her most recent fee application—the only supporting declarations are from Weiler and Barrat regarding their own rates. *Cf. Ingram*, 647 F.3d at 928 (affirming district court's rejection of the prevailing parties' proposed hourly rates in part because they "failed to submit affidavits from local attorneys or from a fee expert to show that the requested rates . . . match the prevailing market rates").

With that said, Gates did provide, in support of her previous fee application submitted in November 2024, an expert report from Philip J. Cross, Ph.D. (Doc. 14-3.) Dr. Cross reviewed FLSA cases in the District of Arizona, determined that "[t]he average billing rate in 2023 dollars is $406.26 and the median rate is $389.19," and concluded that "Barrat's $400 per hour rate is a reasonable one." (*Id.* at 4-6.) Even recognizing those calculations sought to measure the prevailing rate for FLSA work in the District of Arizona as of 2023, whereas the work at issue here was performed by Weiler and Barrat between November 2024 and January 2026, the Court struggles to see how Dr. Cross's report could be viewed as supporting the reasonableness of a $495 hourly rate. Indeed, Dr. Cross included a table in his report reflecting how the "wage inflation rate" could be used to "forecast out reasonable billing rates for Mr. Barrat into the future." (*Id.* at 6.) According to that table, Barrat's "reasonable billing rate" would be $413.30 by the end of 2024 and $424.26 by the end of 2025. (*Id.*)

Declarations from the plaintiff's attorneys may also be useful in determining the reasonable prevailing rate, *United Steelworkers of Am.*, 896 F.2d at 407, although such declarations are alone insufficient, *Schwarz*, 73 F.3d at 908. Here, Gates has submitted declarations from Weiler and Barrat, both of whom avow—albeit in terse fashion and without providing any surrounding details—that "my hourly rate is $495." (Doc. 36-1 ¶ 9; Doc. 36-2 ¶ 9.) Although these declarations may appear, in isolation, to support Gates's position, it can't be overlooked that Gates previously asserted—in support of the fee

application she filed in November 2024—that Weiler "bills for his services at $413.30 per hour." (Doc. 14 at 9.)  In a supporting declaration, Weiler confirmed that this was, in fact, his hourly rate as of November 2024. (Doc. 14-1 ¶ 10.)  Moreover, in an effort to establish the reasonableness of Weiler's then-hourly rate of $413.30, Gates pointed to Barrat's then-hourly rate of $400 and claimed that Barrat had "comparable experience" as Weiler.  (Doc. 14 at 10.)  In effect, then, Weiler is claiming that his hourly rate increased by nearly 20% over the last 15 months and Barrat is claiming that his hourly rate increased by nearly 24% over that same period.

In her reply brief, Gates characterizes these rate increases as "modest" and offers several justifications for them.  For example, Gates contends that "[r]ates change over time." (Doc. 39 at 4.)  This is true, as far as it goes, but the Court is unpersuaded that this principle justifies the decidedly immodest increases at issue here, which go far beyond anything that might be justified by inflation or the general rising tide of hourly rates in the legal industry.  *Cf. Schwarz*, 73 F.3d at 908-09 ("Schwarz also suggests that we reverse on the ground that the district court failed to account for inflation in its choice of hourly rates. However, we have held that an adjustment for inflation is not required in every case, and that the question for the district court is the reasonableness of the fee in light of the totality of the circumstances and the relevant factors, including delay in payment.  Here, the fee is not unreasonable whether it reflects historical or current rates in light of the fact that the hours spent on the productive Portland phase of the litigation weren't all that old.") (cleaned up).  As noted, Dr. Cross opined that even taking the "wage inflation rate" into account, the reasonable rate would only increase to $424.26 by the end of 2025.  (Doc. 14-3 at 6.) Gates also asserts that the increases are justified by the fact that "FLSA appellate work" is "specialized" and "demands different skills than trial-level representation." (*Id.* at 3.)  But Weiler and Barrat do not claim, in their declarations, to charge different rates for trial and appellate work.  To the contrary, each avows that his $495 hourly rate is justified "given the skill level and time commitment require to successfully litigate a FLSA *lawsuit*." (Doc. 36-1 ¶ 9 [emphasis added]; Doc. 36-2 ¶ 9 [emphasis added].)  Nor has Gates submitted a

declaration from any other attorney in an attempt to substantiate the notion that the prevailing rate for FLSA appellate work in the District of Arizona is higher than the prevailing rate for FLSA trial-level work.

The Court also perceives an additional problem with the notion that it would be reasonable to compensate Weiler and Barrat for their appellate and post-remand work at an hourly rate of $495 even though they claimed much lower hourly rates only 15 months ago. Although the only rate-related information in each counsel's declaration is the avowal that "my hourly rate is $495" (Doc. 36-1 ¶ 9; Doc. 36-2 ¶ 9), Gates asserts in her motion that "Weiler increased his rate on December 1, 2025 from $450 to $495" (Doc. 36 at 7). This timing is significant because the great majority of the time entries at issue here predate December 1, 2025. (Doc. 36-3 at 2-5.)

As noted, "rate determinations in other cases" can also be "satisfactory evidence of the prevailing market rate." *United Steelworkers of Am.*, 896 F.2d at 407. In an effort to take advantage of this principle, Gates cites *Lopez v. Babas Motorsports LLC*, 2025 WL 3166859 (D. Ariz. 2025), in which the plaintiff's attorneys in an FLSA action were awarded fees at an hourly rates of $445 and $495, and *Salgado v. Synergy Payment Solutions Inc.*, 2024 WL 4751587 (D. Ariz. 2024), in which those same attorneys were awarded fees at an hourly rate of $445. Although those decisions may seem to support Gates's position, VIP cites several other recent decisions from the District of Arizona in which plaintiff-side FLSA attorneys, including Weiler and Barrat, were awarded fees at hourly rates ranging from $395 to $400. *Dozzi v. On Point Solar Power LLC*, 2024 WL 3416097, *6 (D. Ariz. 2024) (Barrat, $395); *Fritch v. Orion Manufactured Housing Specialists Inc.*, 2023 WL 8781248, *4 (D. Ariz. 2023) (Barrat and Weiler, $400). Additionally, the Court's own research indicates that the same attorneys who were awarded hourly rates of $445 and/or $495 in *Lopez* and *Salgado* were awarded lower hourly rates of $395 and $400 in various decisions issued in 2024. *Robinson v. Beyond Food LLC*, 2024 WL 407377, *2 (D. Ariz. 2024) ($400); *Xalamihua v. GGC Legacy Janitorial Servs. LLC*, 2024 WL 942101, *3 (D. Ariz. 2024) ($395). In both of those cases, the court rejected

the notion that $445 was the prevailing rate in the community for this type of work and provided detailed analysis in support of that conclusion.  *Robinson*, 2024 WL 407377 at *2 ("Counsel seeks compensation for 14.2 hours of work at a rate of $445 per hour.  In several orders issued in separate, similar cases in the last year, the District of Arizona has declined to calculate Plaintiff's counsel's fees using the hourly fee sought by counsel. . . . Accordingly, awarding fees at an hourly rate of $400, slightly higher than previously awarded, would be reasonable and in accordance with prior decisions of the District of Arizona bench."); *Xalamihua*, 2024 WL 942101 at *3 ("Plaintiff brings the motion at hand requesting attorney fees at $445 per hour . . . [but] the Court finds that an attorney fee of $395 per hour is more in line with the prevailing market rate in this community.").

Given this backdrop, the Court does not view *Lopez* and *Salgado* (in which the fee application was unopposed) as conclusively resolving the question of the prevailing rate in the community for this type of work.  Rather, the relevant "rate determinations in other cases" reflect significant disagreement on this topic, with many judges in the District of Arizona concluding that, at least as of 2023 and 2024, the prevailing rate fell in the range of $395 to $400.  That determination, it should be noted, is also consistent with Dr. Cross's analysis and with this Court's determination in the previous fee award in this case (issued in November 2024) that Weiler should receive an hourly rate of $413.30.  Furthermore, that determination is consistent with this Court's "own familiarity with the legal market," its "own knowledge of customary rates," and its own "experience concerning reasonable and proper fees." *Ingram*, 647 F.3d at 928.

For these reasons, Gates has not met her burden of establishing that an hourly rate of $495 is the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience, and reputation as Weiler and Barrat.  Instead, the Court concludes that an hourly rate of $425 would be appropriate and more accurately reflect the market changes and inflation that have occurred since the Court's previous fee award in this case in November 2024 and since the issuance of the other decisions, cited above, concluding that an hourly rate of $395 to $400 was the prevailing rate as of 2023 and 2024.

**B.      Reasonableness Of Time Spent**

As for the 110.9 hours of work that Weiler and Barrat performed between November 27, 2024 and December 22, 2025 (the date of the Ninth Circuit's decision),[1] nearly all of that time was spent on appellate tasks, such as drafting the answering brief and preparing for and presenting oral argument, and the Court is satisfied by the reasonableness of the hours expended and the sufficiency of the time entries. Weiler and Barrat were tasked with defending a $650,805.41 judgment on appeal and persuaded the Ninth Circuit to affirm, in a published opinion, after presenting oral argument. 110.9 hours is not an unreasonable amount of time to achieve such a result. Thus, utilizing the hourly rate of $425 calculated above, Gates is entitled to recover $47,132.50 for that work.

Regarding the fees associated with the work that Weiler and Barrat have performed since the issuance of the Ninth Circuit's decision, the relevant timesheet entries reflect 13.6 hours of such work, with most of the time entries associated with researching and drafting the fee application (or motions related to the fee application) and a few time entries associated with settlement negotiations and the release and satisfaction of the supersedeas bond. (Doc. 36-3 at 5.) The Court is once again satisfied by the reasonableness of the hours expended and the sufficiency of the time entries. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable."); *Nature Conservancy, Inc. v. Sims*, 2013 WL 1332445, *1 (E.D. Ky. 2013) ("[T]ime spent negotiating settlement of a dispute and drafting settlement documents is a necessary expense of litigation.") (citing cases). Additionally, Gates contends that her counsel spent 7.9 hours researching and drafting the reply brief in support of the fee application (Doc. 39 at 10), and the Court is satisfied by the reasonableness of that expenditure of time. This results in a total of 21.5 hours of compensable work. At the aforementioned hourly rate of $425, this results in an additional $9,137.50 in fees, increasing the overall award to $56,270.

---

[1]      Although the spreadsheet of Weiler's and Barrat's billing entries includes a total of 124.5 hours, 13.6 of those hours were spent on tasks in 2026. (Doc. 36-3 at 5.)

Regarding the sums paid to Jaburg Wilk and Counsel Press, although the parties disagree over whether these expenditures qualify as fees or costs, the parties do not clearly indicate why this matters—both fees and costs are recoverable. And to the extent some or all of these expenditures were collection-related, this Court has construed the fee-shifting language in federal statutes to encompass reasonable attorneys' fees and costs incurred during post-judgment collection efforts. *Alvarez v. Talaveras Renovations LLC*, 2024 WL 1195462, *2 (D. Ariz. 2024) (collecting cases). *See also Van Dyke v. BTS Container Serv., Inc.*, 2010 WL 56109, *1 (D. Or. 2010) (concluding that the FLSA supports awarding post-judgment collection fees because "[w]ithout such an award, a judgment is a hollow victory for a plaintiff who was improperly paid"). The Court also notes that the attorneys at Jaburg Wilk charged lower hourly rates than the rates claimed by Weiler and Barrat. (Doc. 36-7 at 3 [hourly rates ranging from $250 to $300].) Thus, VIP's complaints about retaining "a third-party law firm . . . to assist in the collection process" (Doc. 38 at 6) ring hollow—had Weiler and Barrat not outsourced this work, the award here likely would have been even higher. Additionally, although the collection work has proved unsuccessful to date, this does not provide a basis for deeming it unnecessary or non-compensable. Accordingly, Gates is entitled to recover an additional $6,466.63, increasing the overall award to $62,736.63.

Finally, Gates argues in her reply brief that she is "entitled to an additional six days of interest on the original judgment." (Doc. 39 at 10.) According to Gates, although the Court previously calculated post-judgment interest "as of the date of" February 13, 2026, "[t]he bond was not paid until February 19, 2026. Therefore, VIP still owes Gates six days of interest. Using the Court's calculation, Gates is owed $77.59 * 6 = $465.54 and $1.36 * 6 = $8.18. $465.54 + $8.18 = $473.72." (*Id.*) The problem with this argument is that it was not properly raised in Gates's motion, and thus VIP did not have a fair chance to respond to it. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

…

Accordingly,

**IT IS ORDERED** that Gates's motion for attorneys' fees and costs (Doc. 36) is **granted in part and denied in part**. Gates is awarded $62,736.63 in attorneys' fees and costs against V.I.P. Mortgage Incorporated.

Dated this 7th day of April, 2026.

Dominic W. Lanza
United States District Judge